Filed 5/21/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LOS ANGELES UNIFIED SCHOOL DISTRICT, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> JANE DOE, <br><br> Real Party in Interest. | B307389 <br><br> Los Angeles County <br> Super. Ct. No. BC659059 |

ORIGINAL PROCEEDINGS in mandate.  Shirley K. Watkins, Judge.  Petition granted.

Gutierrez, Preciado & House, Calvin House and Arthur C. Preciado for Petitioner.

No appearance for Respondent.

Taylor & Ring, David M. Ring, Natalie L. Weatherford; Esner, Chang & Boyer and Holly N. Boyer for Real Party in Interest.

The Zalkin Law Firm and Devin M. Storey for National Center for the Victims of Crime as Amicus Curiae on behalf of Real Party in Interest.

———————

Code of Civil Procedure section 340.1 (section 340.1) authorizes an award of "up to treble damages" in a tort action for childhood sexual assault where the assault occurred "as the result of a cover up." (Code Civ. Proc., § 340.1, subd. (b)(1).) Government Code section 818 (section 818) exempts a public entity from an award of damages "imposed primarily for the sake of example and by way of punishing the defendant." In this writ proceeding we must determine whether section 818 precludes an award of treble damages under section 340.1 against a public entity.

Plaintiff Jane Doe sued the Los Angeles Unified School District (LAUSD) alleging an LAUSD employee sexually assaulted her when she was 14 years old. She alleged the assault resulted from LAUSD's cover up of the employee's sexual assault of another student and requested an award of treble damages under section 340.1. The trial court denied LAUSD's motion to strike the damages request, reasoning the imposition of treble damages under section 340.1 serves not to punish those who cover up childhood sexual assaults, but to compensate victims. We conclude the court erred.

Childhood sexual assault inflicts grave harm on its vulnerable victims—harm that is undoubtedly amplified in some cases when a victim learns the assault resulted from a deliberate cover up by the individuals and institutions charged with the victim's care. But noneconomic damages under general tort principles already provide compensation for this added

2

psychological trauma, and neither plaintiff nor the statute's legislative history identifies any other possible compensatory function for the treble damages provision in section 340.1. Moreover, while section 340.1 generally serves to ensure perpetrators of sexual assault are held accountable for the harm they inflict on their vulnerable victims, the statute's text unambiguously demonstrates the treble damages provision's purpose is to deter future cover ups by punishing past ones in a tort action. Because treble damages under section 340.1 are primarily exemplary and punitive, a public entity like LAUSD maintains sovereign immunity from liability for such damages under section 818. We therefore grant LAUSD's petition for a writ of mandate and direct the trial court to enter an order striking the treble damages request.

## FACTS AND PROCEDURAL BACKGROUND

We draw the facts from the operative first amended complaint and assume the truth of all properly alleged facts. (See *Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1157.)

LAUSD is a public education agency operating a number of schools in Los Angeles County, including the high school plaintiff attended. Plaintiff was 14 years old when she began her freshman year. Defendant Daniel Garcia was an aide in two of plaintiff's classes.

During the first semester of plaintiff's freshman year, Garcia began giving her special attention and acting physically affectionate towards her at school. During the same period, Garcia targeted other female students, one of whom complained to the school administration that Garcia inappropriately touched

her. Despite this report, the school did not terminate Garcia's employment.

In November 2014, Garcia's "grooming and manipulation" culminated in his sexual abuse of plaintiff. Due to Garcia's threats and coercion, plaintiff did not disclose the abuse to her parents until March 2016. Plaintiff's parents immediately reported the abuse to law enforcement. In May 2016, Garcia was arrested and charged with criminal offenses stemming from the abuse.

Before the incident in November 2014, LAUSD allegedly engaged in a cover up of Garcia's sexual abuse of another female LAUSD student. In February 2014, LAUSD learned Garcia was involved in a " 'boyfriend-girlfriend relationship' " with a female student, H.M., at a different LAUSD school. After learning of the relationship, LAUSD did not terminate Garcia, but instead transferred him to plaintiff's high school, where he met and eventually abused plaintiff. LAUSD also created a false report that H.M. and Garcia " 'dated' *before* Garcia's employment" with LAUSD. Contrary to the report, H.M. testified under oath that she told the school district she met Garcia through his employment at her high school and they " 'dated' *while Garcia was employed*" at the school.

In April 2017, plaintiff sued LAUSD and Garcia. Her operative complaint asserted causes of action against LAUSD for negligent hiring, supervision, and retention of an unfit employee; breach of mandatory duty to report suspected child abuse; negligent failure to warn, train, or educate; and negligent supervision of a minor. She sought an award of economic and noneconomic damages against all defendants and an award of treble damages under section 340.1 against LAUSD.

4

LAUSD moved to strike the request for treble damages. It argued the "discretionary award of treble damages" under section 340.1 is "punitive" and, therefore, prohibited against a public entity under section 818.

Plaintiff opposed the motion. She argued the treble damages provision's purpose was not "merely punitive" because it also served a compensatory function. In support, plaintiff asked the court to take judicial notice of several Assembly Floor Analyses of the enacting legislation that included the following statement attributed to the bill's author:

> "AB 218 would also confront the pervasive problem of cover ups in institutions, from schools to sports league[s], which result in continuing victimization and the sexual assault of additional children. The bill would allow for recovery of up to treble damages from the defendant who covered up sexual assault. This reform is clearly needed both to compensate victims who never should have been victims- and would not have been if past sexual assault had been properly brought to light- and also as an effective deterrent against individuals and entities who have chosen to protect the perpetrators of sexual assault over the victims."

The trial court denied the motion to strike. It granted the request for judicial notice and found the analyses demonstrated a "legislative intent . . . *to compensate the victim*." Because the treble damages provision had a compensatory function, the court ruled immunity under section 818 was not available to LAUSD.

5

LAUSD filed this petition for writ of mandate. We issued an order to show cause.

## DISCUSSION

1. ***The Government Tort Claims Act and Sovereign Immunity from Punitive Damages under Section 818***

The Government Tort Claims Act (Gov. Code, § 810 et seq.; hereafter Tort Claims Act) specifies the cases in which a public entity is liable for injuries arising out of its acts or omissions, or those of its employees. (See, e.g., Gov. Code, §§ 815, 815.2, 815.4, 815.6, 818.2, 818.4, 818.6, 818.7, 818.8; *Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 145 (*Kizer*).) Under the Tort Claims Act, sovereign immunity remains the rule in California, and governmental liability is limited to exceptions specifically set forth in statute. (*Colome v. State Athletic Com.* (1996) 47 Cal.App.4th 1444, 1454–1455; *Elson v. Public Utilities Commission* (1975) 51 Cal.App.3d 577, 584–585.)

Section 818, one of the statutes enacted as part of the Tort Claims Act, provides: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."[1] Read in the context of the Tort Claims Act, section 818 means "a plaintiff who alleges injury caused by

---

[1] Civil Code section 3294, subdivision (a) provides: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

a public entity may be entitled to *actual damages for that injury*, but not punitive damages." (*Kizer, supra,* 53 Cal.3d at p. 145, italics added.)  Section 818 "was intended to limit the state's waiver of sovereign immunity and, therefore, to limit its exposure to liability for *actual compensatory damages* in tort cases." (*Kizer,* at p. 146, italics added.)

Punitive damages and compensatory damages serve different purposes.  (*Marron v. Superior Court* (2003) 108 Cal.App.4th 1049, 1059 (*Marron*), citing *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.* (2001) 532 U.S. 424, 432.)  Compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct."  (*Cooper Industries,* at p. 432.)  In contrast, punitive damages "operate as 'private fines' intended to punish the defendant and to deter future wrongdoing."  (*Ibid.*)  In determining compensatory damages, "[a] jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation."  (*Ibid.*; *Marron,* at p. 1059.)  Punitive damages are not compensation for loss or injury.  (*Marron,* at p. 1059.)

"[S]ection 818 of the Government Code, in referring to 'damages imposed primarily for the sake of example and by way of punishing the defendant' contemplates . . . punitive damages [that] are designed to punish the defendant rather than to compensate the plaintiff.  Punitive damages are by definition in addition to actual damages and beyond the equivalent of harm done."  (*State Dept. of Corrections v. Workmen's Comp. App. Bd.*

7

(1971) 5 Cal.3d 885, 891 (*State Dept. of Corrections*); *Marron,* at p. 1060.)  In contrast, "[d]amages which are punitive in nature, but not 'simply' or solely punitive *in that* they fulfill 'legitimate and fully justified *compensatory functions*,' have been held *not* to be punitive damages within the meaning of section 818 of the Government Code." (*People ex rel. Younger v. Superior Ct., Alameda Cty.* (1976) 16 Cal.3d 30, 35–36 (*Younger*), first and second italics added; see *Helfend v. Southern California Rapid Transit Dist.* (1970) 2 Cal.3d 1, 13, 14–16 (*Helfend*); *State Dept. of Corrections,* at p. 891.)

 *Helfend* and *State Dept. of Corrections* are instructive. In *Helfend*, our Supreme Court considered whether the collateral source rule produced "punitive" damage awards that could not be imposed against a governmental entity under section 818.[2] (*Helfend, supra,* 2 Cal.3d at pp. 8–10.)  Although the rule has a punitive aspect, in that it requires a tortfeasor to pay damages for an injury that an independent source has already compensated, the *Helfend* court held enforcement of the rule against a public entity nonetheless serves a compensatory function permitted under section 818.  This is so, the court reasoned, because a collateral source, like insurance, is "a form of investment, the benefits of which become payable without respect to any other possible source of funds." (*Helfend*, at p. 10.)

---

[2] The collateral source rule holds that "if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." (*Helfend, supra,* 2 Cal.3d at p. 6.)

Thus, enforcing the collateral source rule does not have the effect of paying a plaintiff compensation *greater than* that to which he is entitled for his investment.  On the contrary, were a public entity tortfeasor permitted "to mitigate damages with payments from [a] plaintiff's insurance, [the] plaintiff would be in a position *inferior* to that of having bought no insurance, because his payment of premiums would have earned no benefit."  (*Ibid.*, italics added.)

In *State Dept. of Corrections*, our Supreme Court held Labor Code section 4553, which requires the amount of recoverable workers' compensation to be increased one-half where the employer's serious and willful misconduct causes an employee's injury, does not impose punitive damages under section 818.  (*State Dept. of Corrections, supra,* 5 Cal.3d at p. 891.)  While the statute has a punitive aspect, in that it requires the employer "to pay a higher amount of compensation by reason of his serious and wilful misconduct," the court nonetheless reasoned it was designed not "to penalize an employer," but "to provide more nearly full compensation to an injured employee."  (*Id.* at pp. 889–890.)  As our high court explained, the workers' compensation act's " 'ordinary schedule of compensation' " is " 'not considered to be full and complete compensation for the injuries received,' " because the " 'risk of actual injuries' " under the system is " 'shared by employer and employee.' "  (*Id.* at p. 889.)  As such, the Legislature rationally deemed it " 'just if the injury was caused by willful misconduct of the employer [that] he should be made to pay a greater proportion of the burden,' " and, in that sense, " 'the additional

9

allowance is really for additional compensation . . . , and not for exemplary damages.' " (*Ibid.*; *E. Clemens Horst Co. v. Industrial Accident Commission* (1920) 184 Cal. 180, 193.) Because the statute has the effect of "more fully compensating the plaintiff for an industrial injury rather than penalizing the employer," the court held imposition of the increased award against a public entity does not violate section 818. (*State Dept. of Corrections,* at p. 891.)

This distinction between damages that are primarily punitive and those that also serve a compensatory function has "a fair and substantial relation" to the object of the Tort Claims Act and to promotion of "a number of legitimate state interests." (*Stanley v. City and County of San Francisco* (1975) 48 Cal.App.3d 575, 581.) "This is in part because punitive damages, unlike compensatory damages, are not recoverable as a matter of right." (*McAllister v. South Coast Air Quality Etc. Dist.* (1986) 183 Cal.App.3d 653, 659–660 (*McAllister*), citing *Finney v. Lockhart* (1950) 35 Cal.2d 161, 163 and *Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, 800.) "The basic justification for a punitive award is to punish the offender and to deter others from committing similar wrongs." (*McAllister,* at p. 660.) But this " 'deterrence element . . . adds little justification for [an exemplary damages] award against a [public entity]. In the first place it is to be assumed that the municipal officials will do their duty and if discipline of a wrongdoing employee is indicated, appropriate measures will be taken without a punitive award. [¶] Further, a huge award against [a public entity] would not necessarily deter other employees who generally would be

10

unlikely to be able to pay a judgment assessed against them personally.' " (*Ibid.*)  On the contrary, " '[s]ince punishment is the objective, the people who would bear the burden of the award—the citizens—are the self-same group who are expected to benefit from the public example which the punishment makes of the wrongdoer.' " (*Ibid.*)

Thus, the Tort Claims Act draws a rational distinction by maintaining sovereign immunity from punitive damages that are "awarded to punish the defendant and to deter [outrageous] conduct in the future," while waiving immunity for normal tort damages that are "awarded for the purpose of compensating the plaintiff for injury suffered, i.e., restoring the plaintiff as nearly as possible to his or her former position." (*Kizer, supra,* 53 Cal.3d at pp. 146–147; *McAllister, supra,* 183 Cal.App.3d at pp. 659–661 [section 818 does not violate constitutional equal protection clause].)  "Punitive or exemplary damages 'are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious.' " (*Kizer,* at p. 147.)  Compensation is the essential condition.  Tort damages that have a compensatory function, although also having a punitive aspect, are not "imposed primarily for the sake of example and by way of punishing the defendant" (Gov. Code, § 818), and a public entity is liable under the Tort Claims Act for the injuries those damages serve to compensate.  (*Kizer,* at pp. 145–147; *Younger, supra,* 16 Cal.3d at pp. 35–36; *State Dept. of Corrections, supra,* 5 Cal.3d at pp. 890–891; *Helfend, supra,* 2 Cal.3d at p. 16.)

11

**2.** ***Treble Damages under Section 340.1 Are Imposed to Punish and Deter Cover Ups, Not to Compensate a Plaintiff for Additional Injuries Suffered as a Result of a Cover Up***

Section 340.1 principally governs the period within which a plaintiff must bring a tort claim to recover damages suffered due to childhood sexual assault. (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 952, 979.) In 2019, the Legislature amended the statute to extend the limitations period and, as relevant to this proceeding, to provide for the recovery of up to treble damages when a defendant's cover up of a minor's sexual assault has resulted in the subsequent sexual assault of the plaintiff. (Assem. Bill No. 218 (2019-2020 Reg. Sess.) § 1.)

Section 340.1, subdivision (b)(1) provides: "In an action [for recovery of damages suffered as a result of childhood sexual assault], a person who is sexually assaulted and proves it was as the result of a cover up may recover up to treble damages against a defendant who is found to have covered up the sexual assault of a minor, unless prohibited by another law." Because punitive damages are, by definition, "in addition to actual damages," the imposition of up to treble a plaintiff's actual damages under the statute plainly has a punitive component. (*State Dept. of Corrections, supra,* 5 Cal.3d at p. 888; Civ. Code, § 3294, subd. (a); see also *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 394 (*Imperial Merchant*) ["Treble damages are punitive in nature."]; *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1172 [Unruh Civil Rights Act damages provision "allowing for an exemplary award of up to treble the

12

actual damages suffered with a stated minimum amount reveals a desire to punish intentional and morally offensive conduct."].) However, the critical question under section 818 is whether these damages are *primarily* punitive—that is, whether they are "simply and solely punitive" in that they do not "fulfill legitimate compensatory functions." (*Younger, supra,* 16 Cal.3d at p. 39; *Kizer, supra,* 53 Cal.3d at p. 145.)

Plaintiff maintains the legislative history of Assembly Bill No. 218 (A.B. 218)—the legislation that added treble damages to section 340.1—establishes the provision's compensatory purpose. Specifically, she relies upon a statement attributed to the bill's author in the final Assembly Floor Analysis of the legislation before it became law. The statement explains the "recovery of up to treble damages from the defendant who covered up sexual assault" is "clearly needed *both to compensate victims* who never should have been victims- and would not have been if past sexual assault had been properly brought to light- and also as an *effective deterrent* against individuals and entities who have chosen to protect the perpetrators of sexual assault over the victims." (Assem. Floor Analysis, Analysis of Assem. Bill No. 218 (2019-2020 Reg. Sess.) as amended Aug. 30, 2019, p. 2, italics added.) While the same statement shows up in several other Assembly Floor Analyses for A.B. 218, it appears to be the only reference to compensation related to treble damages in all the legislative history materials the parties have offered.[3]

---

[3] We granted LAUSD's request for judicial notice of the legislative history materials presented to the trial court, and deferred ruling on three subsequent requests for judicial notice

13

Established rules of statutory construction require that we ascertain the intent of the enacting legislative body so we may adopt the construction that best effectuates the law's purpose. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715.) We first examine the words of the statute themselves because the statutory language is generally the most reliable indicator of legislative intent. (*Ibid*.) If the language is clear on its face, we generally " 'do not inquire what the legislature meant; we ask only what the statute means.' " (*J.A. Jones Construction Co. v. Superior Court* (1994) 27 Cal.App.4th 1568, 1575 (*J.A. Jones*); see also Code Civ. Proc., § 1858 ["In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance

filed by LAUSD, plaintiff, and amicus curiae National Center for the Victims of Crime. We grant LAUSD's request to take judicial notice of the bill history for A.B. 218 as a record of official acts of the Legislature. (Evid. Code, § 452, subd. (c).) We also grant plaintiff's request as to the Fact Sheet prepared by the office of the bill's author, but we deny the request with respect to the news articles. (See *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 928 [taking judicial notice of bill author's Fact Sheet].) The news articles cannot be used to establish the truth of the matter asserted and they do not provide additional information relevant to a material issue in this case. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.) For the same reasons, we deny the amicus's request to take judicial notice of several journal articles discussing the psychological impact of childhood sexual abuse. We also deny plaintiff's request to take judicial notice of a letter to members of the Senate voicing opposition to A.B. 218 unless amended. (See *In re Marriage of Pendleton & Fireman* (2000) 24 Cal.4th 39, 47, fn. 6; *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1161, fn. 3.)

contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ."].)

Ambiguity is a different matter. When confronted with ambiguous statutory text, it may be appropriate to look to extrinsic sources, such as legislative history, for evidence of the Legislature's intent. (*J.A. Jones, supra,* 27 Cal.App.4th at p. 1576; see also Code Civ. Proc., § 1859 ["In the construction of a statute the intention of the Legislature . . . is to be pursued, *if possible . . . .*" (Italics added.)].) But even then, we are mindful that "reading the tea leaves of legislative history is often no easy matter." (*J.A. Jones,* at p. 1578.) Assuming there is such a thing as "meaningful collective intent, courts can get it wrong when what they have before them is a motley collection of authors' statements, committee reports, internal memoranda and lobbyist letters." (*Ibid.*) Related to this problem is the reality, on the one hand, that "legislators are often 'blissfully unaware of the existence' of the issue with which the court must grapple," and, on the other, that "ambiguity may be the deliberate outcome of the legislative process." (*Ibid.*)[4] In view of these considerations,

---

[4] As the *J.A. Jones* court noted, judicial use of legislative history has come under formidable criticisms, including that "[l]egislative history has become contaminated by documents which are more aimed at influencing the *judiciary* after the bill is passed than explaining to the rest of the *legislature* what the bill is about before it is passed." (*J.A. Jones, supra,* 27 Cal.App.4th at p. 1577; see Eskridge, *The New Textualism* (1990) 37 UCLA L.Rev. 621, 643–644 [describing recurring skepticism about "the reliability of traditional linchpins of statutory interpretation, such as committee reports and sponsor's statements," as "specific explanations in those sources may well

"the wisest course is to rely on legislative history only when that history itself is unambiguous."  (*Id*. at pp. 1578–1579, citing *Milligan v. City of Laguna Beach* (1983) 34 Cal.3d 829, 831 [legislative " 'purpose' " controlled where it had been stated in " 'unmistakable terms' "].)

A solitary statement repeated in some legislative analyses that treble damages are necessary to compensate victims of a cover up does not unambiguously demonstrate the Legislature in fact added the provision to section 340.1 for that purpose. Critically, the statement does not identify what injury these treble damages are needed to compensate.  It refers only to "victims who never should have been victims," implying that the bill's author had the predicate sexual assault itself in mind— not some added injury resulting from the cover up that requires an added award of treble the plaintiff's actual damages. Moreover, the moral condemnation voiced in the statement— its invocation of "victims who *never should have been* victims" and "individuals and entities who have chosen to protect the perpetrators of sexual assault over the victims"—while plainly warranted, indicates the bill's author may have had a primarily punitive motivation for imposing treble damages in response to

be strategic, rather than sincere, expressions of the statute's meaning"].)  More fundamentally, critics have observed that "the idea that the diverse membership of a democratically elected legislature can ever have one collective 'intent' on anything is a myth; if there is ambiguity it is because the legislature either could not agree on clearer language or because it made the deliberate choice to be ambiguous—in effect, the only 'intent' is to pass the matter on to the courts." (*J.A. Jones,* at p. 1577.)

16

patently heinous conduct.  Whether this was indeed the author's motivation is beside the point.  The fact that this solitary statement is open to such inferences is enough for us to decline to embrace it as an unambiguous expression of the Legislature's intent.  (See *J.A. Jones, supra,* 27 Cal.App.4th at pp. 1578–1579.)

In her return, plaintiff attempts to answer one of the questions left open by the proffered legislative history.  She maintains the treble damages provision is needed, not for the sexual abuse itself, but to compensate for "the *additional harm* caused [to] a victim of sexual abuse who learns that the abuse was entirely avoidable by an entity defendant."  (Italics added.)  Elsewhere in her return plaintiff similarly contends the treble damages provision has a "compensatory element for the indescribable and unquantifiable damage suffered by a child who learns that the very entity charged with caring for him or her not only knew that the abuser had a propensity for sexual abuse, but also actively covered[ ]up evidence of such prior abuse."

It will no doubt be the case in some horrific instances that the victim of a childhood sexual assault will suffer additional psychological trauma upon learning those charged with his or her care and protection in effect facilitated the assault by aiding its perpetrator in a deliberate cover up of past sexual abuse.  However, while the manifestations of this trauma may be largely subjective, damages to compensate for it are by no means unquantifiable, nor are they unavailable to the victim under normal tort damages principles.

"The general rule of damages in tort is that the injured party may recover for *all detriment* caused whether it could

17

have been anticipated or not. [Citations.] In accordance with the general rule, it is settled in this state that *mental suffering* constitutes an aggravation of damages when it naturally ensues from the act complained of, and in this connection mental suffering includes nervousness, grief, anxiety, worry, shock, humiliation and indignity as well as physical pain." (*Crisci v. Security Insurance Co. of New Haven, Conn.* (1967) 66 Cal.2d 425, 433, italics added.) Admittedly, terms like "fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal . . . refer to subjective states, representing a detriment which can be translated into monetary loss only with great difficulty. [Citations.] But the detriment, nevertheless, is a genuine one that requires compensation [citations], and the issue generally must be resolved by the 'impartial conscience and judgment of jurors who may be expected to act reasonably, intelligently and in harmony with the evidence.' " (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 892–893.)

Consistent with these principles, the standard jury instruction for tort damages tells jurors they must award a plaintiff, upon proof of the defendant's liability, full "compensation" in the form of monetary " 'damages' " for *"each item of harm* that was caused by [the defendant's] wrongful conduct." (CACI No. 3900, italics added.) This includes an award of noneconomic damages for all past and future physical pain, *mental suffering*, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, *grief*, *anxiety*, *humiliation*, and *emotional distress*. (CACI No. 3905A.)

18

Plaintiff does not identify any injury from a childhood sexual assault or cover up for which normal tort damages fail to provide full compensation. Nor does the legislative history she presents. And we are unable to discern any uncompensated injury or unfulfilled right to compensation ourselves.[5] (Cf. *State Dept. of Corrections, supra,* 5 Cal.3d at pp. 889–891; *Helfend, supra,* 2 Cal.3d at p. 10.) On the contrary, the treble damages imposed under section 340.1 are, by definition, in addition to a plaintiff's actual damages, and the statute necessarily awards the plaintiff, upon proof of a cover up, damages "beyond the equivalent of harm done." (*State Dept. of Corrections,* at p. 891;

---

[5] Amicus curiae National Center for the Victims of Crime suggests the treble damages provision works to compensate a victim more fully in cases when a school district's cover up results in sexual assault by "[a]llowing the finder of fact to use a damages multiplier to redistribute the collectability of the damages award from the judgment-proof former teacher to the morally culpable employer." The premise for the argument is amicus's assertion that jurors are likely to allocate a greater portion of the fault for childhood sexual abuse to the school employee who committed the abuse than to the institutional defendant that perpetrated a cover up. Suffice it to say, there is no evidence in the record to support this assertion. Moreover, as our Supreme Court recently reaffirmed that "California principles of comparative fault have never required or authorized the reduction of an intentional tortfeasor's liability based on the acts of others," amicus's concern that a victim could be denied the full share of compensation attributable to the injury caused by an institution's intentional cover up is unfounded. (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 24 [holding Civil Code section 1431.2, subdivision (a) does not require reduction of an intentional tortfeasor's liability for noneconomic damages].)

19

*Imperial Merchant, supra,* 47 Cal.4th at p. 394 ["Treble damages are punitive in nature [citation] and punitive damages generally inure only to the person damaged."].) Because the treble damages provision under section 340.1 plainly is designed to punish those who cover up childhood sexual abuse and thereby to deter future cover ups, rather than to compensate victims, the imposition of these damages is primarily punitive under section 818. (*State Dept. of Corrections,* at p. 891.)

3. ***The Tort Claims Act Governs Plaintiff's Tort Claims Against LAUSD; Authorities Concerning Civil Penalties Imposed to Enforce a Regulatory Scheme Are Inapposite***

Even absent a compensatory function, plaintiff argues section 340.1's treble damages provision is nevertheless beyond the purview of section 818 because it advances a nonpunitive "public policy objective." She maintains the provision's focus on cover ups reflects a legislative imperative to bring past childhood sexual abuse to light, and she argues the availability of treble damages advances this objective by offering victims an incentive to come forward to "end the pattern of abuse." Specifically, plaintiff contends treble damages are needed to "encourage those victims who experienced inappropriate encounters with sexual predators that may not have in-and-of themselves been egregious sexual abuse to come forward in a civil action." In those cases, she argues, "inappropriate conduct by a teacher may not give rise to substantial damage awards," but if damages are "enhanced up to three times the actual damages, a victim may be more likely to come forward which may help unravel an institution's

efforts to cover[ ]up and hide evidence of prior sexual assaults or inappropriate behavior."

Plaintiff's argument rests on a misapprehension of controlling Supreme Court authority. As we will explain, our high court has held section 818 does not apply to *civil penalties* that have the primary purpose of securing obedience to statutes and regulations imposed to assure important public policy objectives because those penalties lie outside the perimeters of a *tort action* and therefore are not subject to the Tort Claims Act. However, the court has not recognized a similar exception for exemplary *damages* that may be imposed in a statutorily created tort action like the one plaintiff has brought under section 340.1. In a tort action, as we have discussed, the essential condition that separates primarily punitive damages, for which a public entity maintains sovereign immunity under section 818, and normal tort damages having a punitive component, for which a public entity waives such immunity, is that the latter class of damages serves a *compensatory function*. Absent a compensatory function, punitive damages are just that—simply and solely punitive—under section 818.

In *Kizer*, our Supreme Court directly addressed whether "the Tort Claims Act in general, and Government Code section 818 in particular," are applicable to "statutory civil penalties imposed" under "a detailed regulatory scheme." (*Kizer, supra,* 53 Cal.3d at pp. 144–146.) The writ proceeding arose from a suit filed by the State Department of Health Services (Department) against the County of San Mateo's Department of Health Services (County) to assess civil penalties under the Long-Term

21

Care, Health, Safety, and Security Act of 1973. (*Kizer*, at pp. 141, 143–144.) The Department had licensed the County to operate a long-term health care facility that violated patient care regulations resulting in a patient's death. (*Id.* at pp. 141–144.) The County demurred, arguing the penalties were punitive or exemplary damages and section 818 forbids the imposition of such damages against a public entity. (*Kizer*, at p. 144.) The trial court sustained the demurrer and the appellate court affirmed, concluding the statutory penalty scheme did "not have a compensatory function" and, therefore, the high court's prior holding in *Younger* dictated that the penalties were punitive under section 818. (*Kizer,* at p. 144; cf. *Younger, supra,* 16 Cal.3d at p. 39 ["civil penalties imposed pursuant to [a statute] are not simply and solely punitive in nature [if they] fulfill legitimate compensatory functions and are not punitive damages within the meaning of Government Code section 818"].) The Supreme Court reversed.

Our Supreme Court held "the Tort Claims Act in general, and Government Code section 818 in particular, are not applicable" to civil penalties like those at issue in *Kizer*. (*Kizer, supra,* 53 Cal.3d at p. 144.) Addressing its prior holding in *Younger*, the high court explained that, in *Younger*, "it was not necessary to the resolution of the case to address the question of whether the Tort Claims Act was applicable to the civil penalties imposed" there, because those "penalties were compensatory as well as punitive" and, as such "they were not punitive damages

22

within the meaning of Government Code section 818."[6] (*Kizer,* at pp. 144–145.) "Unlike *Younger,*" the *Kizer* court emphasized, "the present case specifically raises the question of whether the Tort Claims Act applies to the statutory civil penalties imposed by the Department." (*Id.* at p. 145.) In answering that question, the court "conclude[d] that nothing in the Tort Claims Act suggests that Government Code section 818 was intended to apply to statutory civil penalties such as the penalties at issue here." (*Ibid.*)

"The Tort Claims Act," the *Kizer* court emphasized, "specifies the cases in which a public entity is liable for *injuries* arising out of its acts or omissions, or those of its employees." (*Kizer, supra,* 53 Cal.3d at p. 145.) "The Tort Claims Act defines 'injury' as 'death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature

---

[6] *Younger* considered whether section 818 permitted civil penalties under the Water Code to be enforced against the Port of Oakland, a public entity, for an oil spill. (*Younger, supra,* 16 Cal.3d at pp. 34–39.) Although the penalty was admittedly punitive in that it sought to deter oil spills, the *Younger* court concluded the money collected was "not simply and solely punitive in nature" because it also served to "compensate the people of this state" for the unquantifiable damage to public waters and wildlife and to defray some of the costs of cleaning up waste and abating further damages. (*Id.* at pp. 37–39.) As the *Kizer* court explained, "[i]n essence, the *Younger* analysis presumed that Government Code section 818 was applicable and concluded that even if the Tort Claims Act applied, the port was liable for the civil penalties." (*Kizer, supra,* 53 Cal.3d at p. 144.)

that it would be actionable if inflicted by a private person.' " (*Ibid.*, quoting Gov. Code, § 810.8.)  Thus, the *Kizer* court explained, "Government Code section 818 in context means that, under the Tort Claims Act, a plaintiff who alleges *injury caused by a public entity* may be entitled to actual damages for that injury, but not punitive damages." (*Kizer,* at p. 145, italics added.)  Consistent with that interpretation, our Supreme Court observed there was "*nothing* in the Tort Claims Act to suggest that Government Code section 818 was intended to apply to statutory *civil penalties* designed to ensure compliance with a detailed regulatory scheme, . . . even though they may have a punitive effect." (*Id.* at p. 146, italics added.)  "The Department's citation enforcement action," the *Kizer* court held, "lies *outside the perimeters of a tort action* and therefore does not readily lend itself to a liability analysis based on tort principles." (*Ibid.*, italics added.)

Admittedly, this court's past analysis of *Kizer* in *Los Angeles County Metropolitan Transportation Authority v. Superior Court* (2004) 123 Cal.App.4th 261 (*LACMTA*) failed to appreciate this critical distinction between tort claims, which are subject to the Tort Claims Act and section 818, and civil penalty claims, which lie outside the purview of those laws.  In *LACMTA*, a different panel of this court considered whether section 818 exempts a public entity from liability for the $25,000 civil penalty authorized under the Unruh Civil Rights Act for the denial of certain specified rights.  (*LACMTA,* at pp. 266–267; Civ. Code, § 52, subd. (b)(2).)  For a number of independent reasons, the *LACMTA* court correctly concluded section 818 did not preclude

24

imposition of the penalty; however, as relevant here, one of those reasons was that the civil penalty served a "nonpunitive" purpose "to encourage private parties to seek redress through the civil justice system by making it more economically attractive for them to sue."[7] (*LACMTA,* at pp. 271–272.) The *LACMTA* court based this holding on *Kizer*, which the court read as creating an *exception* to section 818 when a civil penalty's "primary purpose [is] 'to secure obedience to statutes and regulations imposed to assure important public policy objectives.' " (*LACMTA,* at p. 274,

---

[7] The *LACMTA* court also concluded section 818 did not preclude imposition of the civil penalties because (1) the Unruh Act "separately provid[ed] for exemplary damages *and* [the] civil penalty, [so] the Legislature obviously intended for the two categories of relief to be distinct from one another"; and (2) the penalty served to provide a "minimum compensatory recovery even in those cases where the plaintiff can show little or *no actual damages*." (*LACMTA, supra,* 123 Cal.App.4th at pp. 267, 271, second italics added.) The former reason was plainly correct and consistent with the *Kizer* court's holding that civil penalties are beyond the purview of the Tort Claims Act and section 818. (*Kizer, supra,* 53 Cal.3d at pp. 145–146.) The latter reason is more dubious in view of our Supreme Court's clear pronouncement that damages are punitive under section 818 when they are "in addition to actual damages and beyond the equivalent of harm done." (*State Dept. of Corrections, supra,* 5 Cal.3d at p. 891 & fn. 2, citing Rest., Contracts, § 342, com. a, p. 561 ["All damages are in some degree punitive and preventive; but they are not so called unless they exceed just compensation measured by the harm suffered."].)

quoting *Kizer, supra,* 53 Cal.3d at pp. 147–148.) This analysis misread *Kizer*.[8]

As discussed, the Supreme Court in *Kizer* held section 818 *does not apply* to civil penalties because those penalties are designed to provide a mechanism for enforcing a regulatory scheme, not to redress *tort* "injury" within the meaning of the Tort Claims Act. (*Kizer, supra,* 53 Cal.3d at pp. 145–146.) Indeed, the passage quoted in *LACMTA* was part of the *Kizer* court's broader discussion of the differences between statutory civil penalties and *tort damages* that the court catalogued to emphasize this point. The paragraph that precedes the discussion in *Kizer* makes clear that it was not the vindication of important public policy objectives that removed the civil penalties

---

[8] The *LACMTA* court also opined that the "critical reason the penalties were sustained by the *Kizer* court, despite their punitive aspect, was that they served a *compensatory* function." (*LACMTA, supra,* 123 Cal.App.4th at p. 274.) This too admittedly misreads *Kizer*. As the Supreme Court made clear, the critical distinction between the civil penalties in *Kizer* and those the high court previously addressed in *Younger* was that the "Water Code penalties [in *Younger*] were compensatory as well as punitive," while the statutory penalty scheme in *Kizer* did "not have a compensatory function." (*Kizer, supra,* 53 Cal.3d at pp. 144–145.) Thus, it was "not necessary" in *Younger* "to address the question of whether the Tort Claims Act was applicable to the civil penalties imposed under the Water Code." (*Kizer,* at p. 144.) But "[u]nlike *Younger*," because the civil penalties in *Kizer* did not have a compensatory function, the case "specifically raise[d] the question of whether the Tort Claims Act applies to the statutory civil penalties imposed by the Department." (*Id.* at p. 145.)

from section 818's purview; rather, it was the fact that those sanctions were not predicated on a tort injury:

> "In our view, Government Code section 818 was not intended to proscribe all punitive sanctions. Instead, the section was intended to limit the state's waiver of sovereign immunity and, therefore, to limit its exposure to liability for actual compensatory damages *in tort cases*. The Tort Claims Act must be read against the background of *general tort law*. [Citation.] Against that background, *the Tort Claims Act does not apply to the type of sanction that the Legislature has imposed in this case to enforce the Act's regulatory scheme*. Under the Long-Term Care, Health, Safety, and Security Act of 1973, the essential prerequisite to liability is a violation of some minimum health or safety standard rather than '*injury*' or '*damage*.' Consequently, we do not believe that the Legislature intended the immunity created by Government Code section 818 to apply to statutory civil penalties expressly designed to enforce minimum health and safety standards."

(*Kizer,* at p. 146, italics added, fn. omitted; see also *Burden v. County of Santa Clara* (2000) 81 Cal.App.4th 244, 252–253 [recognizing *Kizer* is inapplicable because "Labor Code section 970 creates a statutory tort cause of action"].)

Even if we agreed with plaintiff that the treble damages provision might incentivize victims to file claims for childhood sexual assault, this supposed public policy objective does not remove the enhanced damages provision from section 818's purview. Treble damages under section 340.1 are available only in "an action for recovery of damages suffered as a result of childhood sexual assault" (Code Civ. Proc., § 340.1, subds. (a) & (b)(1))—in other words, in a *tort action for damages* subject to the Tort Claims Act and section 818. (*Kizer, supra,* 53 Cal.3d at pp. 145–146.) Unlike the civil penalties at issue in *Kizer*, to obtain treble damages under section 340.1, plaintiff must prove she suffered actual harm. (Cf. *Kizer,* at p. 147 ["Civil penalties under the Act, unlike damages, require no showing of actual harm per se."].) Unlike civil penalties, treble damages under section 340.1 require the defendant to have engaged in willful misconduct by deliberately covering up past childhood sexual abuse. (Cf. *Kizer,* at p. 147 ["The civil penalties under the Act can be imposed for negligent conduct and it is not necessary . . . [to] prove that a health facility's actions in violating specific health and safety regulations are malicious, wilful, or even intentional."].) And, critically, while civil damages are mandatory upon proof of a violation, "*up to* treble damages" under section 340.1 are imposed at the discretion of the fact finder upon proof that childhood sexual abuse resulted from the defendant's cover up. (Code Civ. Proc., § 340.1, subd. (b)(1), italics added; *Kizer,* at p. 148, citing *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1598 ["Thus, while both exemplary damages and statutory damages serve to motivate compliance

28

with the law and punish wrongdoers, they are distinct legal concepts, one of which is entrusted to the factfinder, the other to the Legislature."]; see also *Marron, supra,* 108 Cal.App.4th at p. 1059 [a jury's " 'imposition of punitive damages is an expression of its moral condemnation' "].)

As our Supreme Court's authorities uniformly teach: "Government Code section 818 in context means that, under the Tort Claims Act, a plaintiff who alleges injury caused by a public entity may be entitled to actual damages for that injury, but not punitive damages." (*Kizer, supra,* 53 Cal.3d at p. 145.) In referring to " 'damages imposed primarily for the sake of example and by way of punishing the defendant,' " section 818 "contemplates . . . punitive damages [that] are designed to punish the defendant rather than to compensate the plaintiff." (*State Dept. of Corrections, supra,* 5 Cal.3d at p. 891.) All punitive awards serve a public policy objective by deterring future misconduct; however, it is only when those damages also "fulfill 'legitimate and fully justified *compensatory functions*' " that they are to be regarded as "not 'simply' or solely punitive" under section 818. (*Younger, supra,* 16 Cal.3d at pp. 35–36, italics added.) The treble damages provision in section 340.1 does not have a compensatory function; its primary purpose is to punish past childhood sexual abuse cover ups to deter future ones. While this is a worthy public policy objective, it is not one for which the state has waived sovereign immunity under the Tort Claims Act. (See *Kizer,* at pp. 145–146.) A public entity like LAUSD is immune from these enhanced damages under section 818.

## DISPOSITION

The writ is granted.  The trial court is directed to enter an order granting LAUSD's motion to strike the treble damages request and related allegations of the complaint.  LAUSD is entitled to its costs, if any.

**CERTIFIED FOR PUBLICATION**


EGERTON, J.

We concur:


EDMON, P. J.


SALTER, J.*

---

\*      Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.